## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CAPITAL ONE, N.A. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| TEXAS BAY BROOKWOOD, L.P., JAMES | § | |
| S. GOODY, JONATHAN J. GOODY, AND | § | |
| BRIAN H. PRINTZ | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Capital One, N.A., f/k/a Hibernia National Bank and as successor to Coastal Banc, SSB ("Plaintiff" or "Capital One"), files this its Original Complaint against Defendants Texas Bay Brookwood, L.P., James S. Goody, Jonathan J. Goody, and Brian H. Printz (collectively, "Defendants") and for cause of action respectfully shows the Court the following:

### 1.

### PARTIES

1.1     Plaintiff is a national banking association with its main office in Virginia.

1.2     Texas Bay Brookwood, L.P. ("Texas Bay Brookwood") is a limited partnership organized under the laws of the state of Texas with its principal place of business in San Francisco, California.  Texas Bay Brookwood may be served with summons on its registered agent, Sara J. Evans, at 3400 Carlisle Street, Suite 400, Dallas, Texas 75204-1268.

1.3     James S. Goody ("James S. Goody"), an individual who is a citizen of the state of California, may be served with summons at 17 Littlewood Drive, Piedmont, California 94611, or at 1806 Laguna Street, San Francisco, California 94115, or wherever he may be found.

1.4     Jonathan J. Goody ("Jonathan J. Goody"), an individual who is a citizen of the state of California, may be served with summons at 8 Hardwick Avenue, Piedmont, California 94611, or at 47 St. James Place, San Francisco, California 94611, or wherever he may be found.

1.5     Brian H. Printz ("Printz"), an individual who is a citizen of the state of California, may be served with summons at 2656 Webster Street, San Francisco, California 94123, or at 3636 Paradise Drive, Tiburon, California 94920, or wherever he may be found.

## 2.

## JURISDICTION AND VENUE

2.1     The Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

2.2     The Court has venue over this civil action pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where a substantial part of the events or omissions giving rise to this action occurred or where a substantial part of the property that is the subject of the action is situated.

## 3.

## FACTS

3.1     On or about July 11, 2001, Texas Bay Brookwood (by and through James S. Goody, the managing member of Texas Bay Brookwood's general partner) executed and delivered a promissory note payable to Plaintiff in the principal amount of $5,500,000.00 (the "Promissory Note"). A true and correct copy of the Promissory Note is attached hereto as Exhibit "A" and incorporated herein by reference. The Promissory Note had a stated maturity date of January 1, 2004, and required that, among other things, Texas Bay Brookwood make monthly interest payments to Plaintiff for twenty-nine (29) consecutive months, then one final payment of all principal and accrued interest not yet paid to Plaintiff.

3.2     On or about January 1, 2004, Plaintiff and Texas Bay Brookwood executed an Extension and Modification Agreement (the "First Extension and Modification Agreement") that, among other things, extended the Promissory Note's maturity date to January 1, 2005 and modified Texas Bay Brookwood's principal and interest payment plan.  A true and correct copy of the First Extension and Modification Agreement is attached hereto as Exhibit "B" and incorporated herein by reference.

3.3     On or about January 1, 2005, Plaintiff and Texas Bay Brookwood executed a second Extension and Modification Agreement (the "Second Extension and Modification Agreement") that, among other things, extended the Promissory Note's maturity date to January 1, 2008 and further modified Texas Bay Brookwood's principal and interest payment plan.  A true and correct copy of the First Extension and Modification Agreement is attached hereto as Exhibit "C" and incorporated herein by reference.

3.4     When Texas Bay Brookwood failed to meet its obligations under the Second Extension and Modification Agreement, Plaintiff extended the Promissory Note's maturity date two additional times, the first time to February 15, 2008 and the second time to May 5, 2008.  True and correct copies of the January 25, 2008 and March 21, 2008 letters extending the Promissory Note's maturity date (collectively, the "Note Modification Letters") are attached hereto as Exhibits "D" and "E" and incorporated herein by reference.

3.5     The Promissory Note, as modified by the First Extension and Modification Agreement, the Second Extension and Modification Agreement, and the Note Modification Letters, is referred to herein as the "Note."

3.6     On or about July 11, 2001, James S. Goody, in conjunction with the execution of the Note, executed and delivered to Plaintiff a separate commercial guaranty ("Guaranty # 1").  A true

and correct copy of Guaranty # 1 is attached hereto as Exhibit "F" and incorporated herein by reference. Pursuant to the terms of Guaranty # 1, James S. Goody agreed to, among other things, absolutely and unconditionally guarantee and promise to pay to Plaintiff, on demand, the Indebtedness (as that term was defined in Guaranty # 1) of Texas Bay Brookwood to Plaintiff under the Note, as well as any other indebtedness of Texas Bay Brookwood to Plaintiff.

      3.7     On or about July 11, 2001, Jonathan J. Goody, in conjunction with the execution of the Note, executed and delivered to Plaintiff a separate commercial guaranty ("Guaranty # 2"). A true and correct copy of Guaranty # 2 is attached hereto as Exhibit "G" and incorporated herein by reference. Pursuant to the terms of Guaranty # 2, Jonathan J. Goody agreed to, among other things, absolutely and unconditionally guarantee and promise to pay to Plaintiff, on demand, the Indebtedness (as that term was defined in Guaranty # 2) of Texas Bay Brookwood to Plaintiff under the Note, as well as any other indebtedness of Texas Bay Brookwood to Plaintiff.

      3.8     On or about July 11, 2001, Printz, in conjunction with the execution of the Note, executed and delivered to Plaintiff a separate commercial guaranty ("Guaranty # 3"). A true and correct copy of Guaranty # 3 is attached hereto as Exhibit "H" and incorporated herein by reference. Pursuant to the terms of Guaranty # 3, Printz agreed to, among other things, absolutely and unconditionally guarantee and promise to pay to Plaintiff, on demand, the Indebtedness (as that term was defined in Guaranty # 3) of Texas Bay Brookwood to Plaintiff under the Note, as well as any other indebtedness of Texas Bay Brookwood to Plaintiff.

      3.9     Guaranty # 1, Guaranty # 2, and Guaranty # 3 shall be collectively referred to as the "Guaranties."

      3.10    Under the terms of the Note and the Guaranties, Defendants waived, among other things, presentment, demand, protest, and notice of any kind.

3.11    On or about June 30, 2008, Plaintiff and Defendants entered into a Forbearance and

Settlement Agreement (the "Forbearance Agreement") whereby Defendants acknowledged that the

amount due on the Note was the principal sum of $5,109,716.94, plus accrued interest through June

30, 2008 in the amount of $40,435.05, together with interest accruing on the principal sum at the rate

identified in the Forbearance Agreement from June 30, 2008 until paid.  A true and correct copy of

the Forbearance Agreement is attached hereto as Exhibit "I" and incorporated herein by reference.

Pursuant to the Forbearance Agreement, Plaintiff agreed to forbear from, among other things,

enforcing its rights and remedies under the Note and Guaranties until September 30, 2008, when all

sums were due.

3.12    Defendants, however, failed to pay the indebtedness due and owing under the Note

and Guaranties pursuant to the Forbearance Agreement.  Accordingly, Plaintiff declared the entire

indebtedness under the Note to be accelerated, due, and payable in full, including the unpaid

principal balance, all accrued interest, and all other amounts, costs, and expenses for which

Defendants were and are liable to Plaintiff.  As of October 1, 2008, the Note began to accrue interest

at the rate of 18% per annum.

3.13    While not required to do so, Plaintiff made demand on Defendants by letter dated

October 14, 2008 for full payment of the indebtedness.  A true and correct copy of the October 14,

2008 demand letter to Defendants is attached hereto as Exhibit "J" and incorporated herein by

reference.  Defendants, however, have failed and refused to comply with Plaintiff's demand.

**4.**

**ENFORCEMENT OF THE NOTE**

4.1    All previous paragraphs are incorporated herein by reference.

4.2    A balance of $5,348,251.01 remains outstanding on the Note as of December 15,

2008 (including principal in the amount of $5,079,716.94, accrued unpaid interest in the amount of

$217,736.90, and fees of $50,797.17).  The principal balance continues to accrue interest at the per diem rate of $2,539.86.

4.3     Despite its obligation to do so, Texas Bay Brookwood, as maker of the Note, has failed to pay the indebtedness due and owing under the Note.  Thus, Texas Bay Brookwood is in default and is liable to Plaintiff for the full amount of the indebtedness due and owing under the Note.  Plaintiff seeks a judgment against Texas Bay Brookwood for the balance remaining on the Note, including without limitation, principal, accrued and accruing interest, and fees.

**5.**

**ENFORCEMENT OF THE GUARANTIES**

5.1     All previous paragraphs are incorporated herein by reference.

5.2     James S. Goody, Jonathan J. Goody, and Printz executed the Guaranties, unconditionally guaranteeing the payment of the indebtedness incurred by Texas Bay Brookwood under the Note.  As set forth above, Texas Bay Brookwood has failed to pay the indebtedness due and owing under the Note.  James S. Goody, Jonathan J. Goody, and Printz have failed to make payment of the indebtedness as required by the Note and the Guaranties.  Accordingly, Plaintiff seeks a judgment against James S. Goody (under Guaranty # 1), against Jonathan J. Goody (under Guaranty # 2), and against Printz (under Guaranty # 3) as guarantors of the Note for the balance remaining on the Note, including without limitation, principal, accrued and accruing interest, and fees.

**6.**

**DAMAGES**

6.1     The indebtedness owed to Plaintiff by Defendants exceeds the minimum jurisdictional limits of this Court.

6.2     Plaintiff expressly does not waive any of its rights and remedies, including, without limitation, its rights and remedies relating to any collateral that secures the indebtedness owed to Plaintiff.

## 7.

## CONDITIONS PRECEDENT

7.1     All conditions precedent to Plaintiff's right to recovery against the Defendants have been performed or have occurred.

## 8.

## ATTORNEYS' FEES

8.1     As a result of Defendants' failure to pay all amounts due and owing under the Note and the Guaranties pursuant to their terms, Plaintiff was required to retain the services of the undersigned attorneys to enforce its rights to collect the monies due and owing. Plaintiff has agreed to pay the undersigned attorneys a reasonable fee and reimburse their reasonable expenses and costs. Pursuant to the terms of the Note and the Guaranties and Texas Civil Practice and Remedies Code § 38.001(8), Plaintiff is entitled to recover reasonable and necessary attorneys' fees.

## 9.

## PRAYER

Plaintiff prays that Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have judgment as follows:

1.     Against Defendants, jointly and severally, awarding to Plaintiff all unpaid amounts due and owing pursuant to the Note and the Guaranties;

2.     All lawful pre-judgment interest due pursuant to the Note and the Guaranties until the day the judgment is rendered herein;

3.     All lawful post-judgment interest on the foregoing amounts at the highest rate allowed by the laws of the state of Texas;

4.      All reasonable attorneys' fees and post-judgment interest on such attorneys' fees at the highest rate allowed by the laws of the state of Texas, and all reasonable attorneys' fees to be incurred by Plaintiff in responding to any appeal proceedings instituted by one or more Defendants, including all costs and expenses related to all such appeal proceedings;

5.      All costs of court incurred in connection with this lawsuit; and

6.      All additional and further relief, general and special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Dated this _19th_ day of December, 2008.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: _____
      Retta A. Miller
      State Bar No. 14106700

901 Main St., Suite 6000
Dallas, Texas 75202
(214) 953-6000 - Telephone
(214) 953-5822 - Telecopy
Email:  rmiller@jw.com

ATTORNEYS FOR PLAINTIFF
CAPITAL ONE, N.A.

# Exhibit A



8991235-0000

## PROMISSORY NOTE

$5,500,000 00          Houston, Texas          July 11, 2001

FOR VALUE RECEIVED, the sufficiency of which is hereby acknowledged and confessed, the undersigned, **Texas Bay Brookwood Limited Partnership**, a Texas limited liability partnership ("Maker"), hereby promises to pay to the order of **Coastal Banc ssb**, a Texas chartered savings bank ("Payee"), at its offices at 5718 Westheimer, Suite 100, Houston, Texas 77057, Attention   Loan Servicing, in lawful money of the United States of America and in immediately available funds, the principal sum of FIVE MILLION FIVE HUNDRED THOUSAND DOLLARS ($5,500,000 00), or so much thereof as may be advanced and outstanding hereunder pursuant to the Loan Agreement hereinafter defined, together with interest on the outstanding principal balance from day to day remaining unpaid as herein specified in monthly installments as follows

    (a)     Commencing August 1, 2001, and continuing monthly and regularly thereafter on the first (1st) day of each and every month thereafter for twenty-nine (29) months, interest only at the Loan Interest Rate on the outstanding principal shall be due and payable, and

    (b)     A final installment in the amount of all outstanding principal, plus accrued and unpaid interest, shall be due and payable on the Maturity Date

Each change in the rate of interest charged hereunder shall become effective, without notice to Maker, on the Interest Rate Adjustment Date. Without limiting the foregoing, Payee shall use its best efforts to notify Maker of any change in the interest rate hereunder, and until Maker is notified by Payee of such change, Maker may continue to make payments hereunder at the prior interest rate; provided, however, nothing contained herein shall be construed as limiting Payee's right to collect interest at the rates described in this Note and Maker will promptly pay any shortfall occasioned by Maker's underpayment of interest on demand.  In the event of overpayment, Lender will apply the overpayment against the next accruing payment of interest  Notwithstanding the foregoing however, if at any time the rate of interest specified hereunder shall exceed the Maximum Rate, thereby causing the interest rate hereon to be limited to the Maximum Rate, then any subsequent reduction in the Loan Interest Rate will not reduce the rate of interest hereon below the Maximum Rate until the total amount of interest accrued hereon equals the amount of interest which would have accrued hereon if the rate specified hereunder had at all times been in effect.  All past due principal and interest shall bear interest at the Default Rate (hereinafter defined)

As used in this Note, the following terms shall have the respective meanings indicated below.

"Loan Agreement" means that certain Rehabilitation Loan Agreement of even date herewith between Maker and Payee, as the same may be amended or modified from time to time

HOU 667515.2

/

"Business Day" means any day other than a Saturday, Sunday or legal holiday for commercial banks in Houston, Texas.

"Default Rate" means the lesser of the Maximum Rate or eighteen percent (18%) per annum.

"Event of Default" shall have the same meaning as such term has in the Loan Agreement.

"Interest Rate Adjustment Date" means the date hereof and the first (1st) day of every calendar month thereafter.

"Loan Interest Rate" means the floating rate of interest per annum equal to Two Hundred Fifty (250) basis points (each basis point equaling one hundredth of one percent) in excess of the thirty (30) day London Interbank Based Offer Rate, as quoted in the Bloomberg Index, or such other reputable and nationally-recognized rate quoting service selected by Payee, in effect on each Interest Rate Adjustment Date

"Maturity Date" means January 1, 2004

"Maximum Rate" means the maximum rate of nonusurious interest permitted from day to day by applicable law, including as to V.T C A , Finance Code, Chapter 303 (and as the same may be amended), but otherwise without limitation, that rate based upon the "indicated rate ceiling" and calculated after taking into account any and all relevant fees, payments, and other charges in respect of the Loan Documents (as defined in the Agreement) which are deemed to be interest under applicable law

Maker shall have the right to prepay, at any time and from time to time without premium or penalty, the entire unpaid principal balance of the Note or any portion thereof, with accrued interest to the date of prepayment on the amounts prepaid

To the extent permitted by law, Maker shall pay to Payee a late charge equal to three percent (3%) of any payment received by Payee more than ten (10) days after the date such payment was due and payable, provided, however, that such late charge shall not be applicable to the final installment of all unpaid principal and interest accruing thereon  Any late charge due hereunder during a period that the Default Rate applies, shall be credited against accrued unpaid interest when paid  Maker agrees that its failure to make any payments required hereunder when the same become due will cause damage to Payee in amounts that are difficult to estimate, and, accordingly, Maker agrees that the late charge described herein and the Default Rate together constitute a reasonable estimate of the damages to Payee in such event

Each payment made by Maker under this Note shall be made in immediately available funds (the form of which may include a check from Maker) before 12 00 noon, local time of Payee, on the

HOU.667515 2                                    -2-

date that such payment is required to be made   Any payment received and accepted by Payee after such time shall be considered for all purposes (including the calculation of interest, to the extent permitted by law) as having been made on Payee's next following Business Day   Whenever any payment hereunder shall be stated to be due on a day that is not a Business Day, such payment may be made on the next succeeding Business Day, and interest shall continue to accrue during such extension

It is the intention of Maker and Payee to conform strictly with applicable usury laws Notwithstanding anything to the contrary contained herein, no provision of this Note shall require the payment or permit the collection of interest in excess of the Maximum Rate   If any excess of interest in such respect is herein provided for, or shall be adjudicated to be so provided, in this Note or otherwise in connection with this loan transaction, the provisions of this paragraph shall govern and prevail, and neither Maker nor the sureties, guarantors, successors or assigns of Maker shall be obligated to pay the excess amount of such interest, or any other excess sum paid for the use, forbearance or detention of sums loaned pursuant hereto.  If for any reason interest in excess of the Maximum Rate shall be deemed charged, required or permitted by any court of competent jurisdiction, any such excess shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note, and, if the principal amount hereof has been paid in full, any remaining excess shall forthwith be paid to Maker.  In determining whether or not the interest paid or payable exceeds the Maximum Rate, Maker and Payee shall, to the extent permitted by applicable law, (i) characterize any nonprincipal payment as an expense, fee, or premium rather than as interest, (ii) exclude voluntary prepayments and the effects thereof, and (iii) amortize, prorate, allocate, and spread in equal or unequal parts the total amount of interest throughout the entire contemplated term of the indebtedness evidenced by this Note so that the interest for the entire term does not exceed the Maximum Rate

Maker shall be in default hereunder upon the happening of any Event of Default   Upon the occurrence of any Event of Default, the holder hereof may, at its option, declare the entire unpaid principal of and accrued interest on this Note immediately due and payable without additional notice, demand or presentment, all of which are hereby waived, and upon such declaration, the same shall become and shall be immediately due and payable, and the holder hereof shall, subject to applicable law, have the right to foreclose or otherwise enforce all liens or security interests securing payment hereof, or any part hereof, and offset against this Note any sum or sums owed by the holder hereof to Maker.  Failure of the holder hereof to exercise this option shall not constitute a waiver of the right to exercise the same upon the occurrence of a subsequent Event of Default

If the holder hereof expends any effort in any attempt to enforce payment of all or any part or installment of any sum due the holder hereunder, or if this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, Maker agrees to pay all collection costs and fees incurred by the holder, including reasonable attorneys' fees

This Note shall be governed by and construed in accordance with the laws of the State of Texas and the applicable laws of the United States of America   This Note is performable in Harris

HOU 667515 2                                          -3-

County, Texas, and Maker and each surety, guarantor, endorser, and other party ever liable for payment of any sums of money payable on this Note, to the extent permitted by applicable law, jointly and severally waive the right to be sued hereon elsewhere  Courts within the State of Texas shall have jurisdiction over any and all disputes between Maker and Payee, whether in law or in equity, including, but not limited to, any and all disputes arising out of or relating to this Note, and venue in any such dispute whether in federal or state court shall be laid in Harris County, Texas

Except as expressly set forth herein, Maker and each surety, guarantor, endorser, and other party ever liable for payment of any sums of money payable on this Note jointly and severally waive notice, presentment, demand for payment, protest, notice of protest and non-payment or dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, diligence in collecting, grace, and all other formalities of any kind, and consent to all extensions, renewals, and modifications without notice for any period or periods of time and partial payments, before or after maturity, without prejudice to the holder  The holder shall similarly have the right to deal in any way, at any time, with one or more of the foregoing parties without notice to any other party, and to grant any such party any extensions of time for payment of any of said indebtedness, or to release part or all of the collateral securing this Note, or to grant any other indulgences or forbearances whatsoever, without notice to any other party and without in any way affecting the personal liability of any party hereunder.

Payment of this Note is secured by, among other things, (i) the Deed of Trust (as defined in the Loan Agreement) covering certain property located in Dallas County, Texas as more particularly described therein, (ii) the Absolute Assignment (as defined in the Loan Agreement) covering certain property more particularly described therein, (iii) the Collateral Assignment (as defined in the Loan Agreement) covering certain property more particularly described therein, and (iv) the Guaranties executed by James S  Goody, Brian H  Printz and Jonathan J  Goody

Any notice contemplated or required under this Note shall be delivered and shall be effective in accordance with the notice provisions contained in the Loan Agreement.

Maker hereby expressly waives any right to trial by jury in any action or legal proceeding arising out of or relating to the Loan Documents or the transactions contemplated thereby or hereby.

[SIGNATURE PAGE FOLLOWS]

HOU 667315 2                            -4-

Texas Bay Brookwood Limited Partnership,
a Texas limited partnership

By      Texas Bay Brookwood General Partner, L L C ,
        a Texas limited liability company,
        its general partner

By:
        James S. Goody, Managing Member

THE STATE OF CALIFORNIA                     §

THE COUNTY OF San Francisco                 §

    This document was acknowledged before me on _____June 26_____ 2001, by James S.
Goody, Managing Member of Texas Bay Brookwood General Partner, L L C., a Texas limited
liability company, the general partner of Texas Bay Brookwood Limited Partnership, a Texas limited
partnership.

STACI SELITSCH
Comm # 1159723
NOTARY PUBLIC CALIFORNIA
Santa Clara County
My Comm Expires Oct 27 2001

Notary Public in and for
The State of California

Printed Name _____Staci Selitsch_____
Commission Expiration Date: _____10/27/01_____

Exhibit B

GF#2101-00348-LLT
$40⁰⁰ CTICGF#549021-M

When Recorded, Return To:
COASTAL BANC ssb
5718 Westheimer
Houston, Texas 77057
Attn: Yvonne Austin (Loan #8203780)

Return To: SRT
Chicago Title Insurance Company
Southwest Region Commercial Center
2001 Bryan Street, Suite 1700
Dallas, Texas 75201
214-303-5300

2824354

4529678
04/02/04        $40.00  Deed

## EXTENSION AND MODIFICATION AGREEMENT

| | |
|---|---|
| THE STATE OF TEXAS § | **KNOW ALL MEN BY THESE PRESENTS:** |
| COUNTY OF DALLAS § | |

**THIS EXTENSION AND MODIFICATION AGREEMENT** ("Agreement") is made as of the 1ˢᵗ day of January, 2004, by and between **TEXAS BAY BROOKWOOD LIMITED PARTNERSHIP**, a Texas limited partnership ("Borrower") and **COASTAL BANC ssb**, a Texas chartered banking association ("Lender").

## WITNESSETH:

WHEREAS, Lender made a loan ("Loan") to Borrower on July 11, 2001, in the principal amount of Five Million Five Hundred Thousand Dollars ($5,500,000.00); and

WHEREAS, Lender and Borrower executed that certain Rehabilitation Loan Agreement ("Loan Agreement"), of even date therewith, pertaining to the Loan; and

WHEREAS, Borrower executed and delivered to Lender that certain Promissory Note (as renewed, extended or modified, without limitation, any renewal, extension or modification hereinafter referenced, the "Note"), of even date therewith, payable to the order of Lender in the amount of and evidencing the Loan; and

WHEREAS, Borrower executed and delivered that certain Deed of Trust, Mortgage, Security Agreement and Financing Statement (as renewed, extended or modified, including, without limitation, any renewal, extension or modification hereinafter referenced, the "Deed of Trust"), of even date with the Note, to Linda B. Frazier, as trustee (together with any successor or substitute thereof, the "Trustee"), for the benefit of Lender, recorded in the Deed of Trust Records of Dallas County, Texas in Volume 2001134, Page 1304, covering the real property described in Exhibit "A" attached hereto and incorporated herein for all purposes, together with all improvements, appurtenances, other properties (whether real or personal), rights and interests described in and encumbered by the Deed of Trust (collectively, the "Property"), to secure the payment of the Note and performance by Borrower of the other obligations set forth in the Loan Documents (as hereinafter defined); and

- 1 -

HOU:2252950.1

2004 064 11468

WHEREAS, Borrower executed and delivered to Lender that certain Absolute Assignment of Rents and Income (With License Back) (as amended, including, without limitation, any amendments hereinafter referenced, the "Absolute Assignment"), of even date with the Note, recorded in the Deed Records of Dallas County, Texas in Volume 2001134, Page 1339, assigning to Lender all rents, lease, income, revenues, issues and profits which may arise from the operation or ownership of the Property, to secure the payment of the Note and performance by Borrower of the other obligations set forth in the Loan Documents; and

WHEREAS, Borrower executed and delivered to Lender that certain Collateral Assignment of Leases, Deposits and Agreements (as amended, including, without limitation, any amendments hereinafter referenced, the "Collateral Assignment"), of even date with the Note, recorded in the Deed Records of Dallas County, Texas in Volume 2001134, Page 1351, assigning to Lender all of Borrower's right, title and interest to all leases, agreements, security deposits, monetary deposits, and other documents and agreements as more fully set out in the Collateral Assignment, which may arise from the operation or ownership of the Property, to secure the payment of the Note and performance by Borrower of the other obligations set forth in the Loan Documents; and

WHEREAS, Borrower caused to be issued by Chicago Title Insurance Company ("Title Company") that certain Mortgagee Policy of Title Insurance No. 044-903-101-549021 ("Policy") in the amount of the Note, insuring the dignity and priority of the liens created and evidenced by the Deed of Trust; and

WHEREAS, Borrower caused each of James S. Goody, Brian H. Printz and Jonathan J. Goody (jointly and severally, the "Guarantor") to execute and deliver to Lender their individual Guaranty Agreement (the three (3) Guaranty Agreements jointly and severally, the "Guaranty"), all of even date with the Note, guaranteeing payment and performance of all of the obligations contained in the Loan Documents, including, without limitation, the Note; and

WHEREAS, Lender and Borrower now propose to modify certain of the terms and provisions of the Note, the Deed of Trust, the Loan Agreement, the Guaranty and the other related documents pertaining to, evidencing, governing or securing the Loan (collectively, the "Loan Documents").

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender hereby agree, notwithstanding anything to the contrary contained in any of the Loan Documents, as follows:

1.  Modification and Amendment to the Loan Agreement.

    A.  Section 1.01. Definitions shall be modified and amended by the deletion of the following defined terms, with the following replacements:

    "Debt Service" for any particular period means the hypothetical monthly principal and interest payments during the period based on a loan in the amount of $1,750,000.00

- 2 -

HOU:2252950.1

2004064 11469

requiring equal monthly payments of principal and interest based on a twenty-five (25) year amortization, at the greater of (A) the Loan Interest Rate or (B) seven and one-half percent (7½%) per annum."

B.    Sections 2.03 and 2.04 of the Loan Agreement shall be deleted in its entirety and replaced with the following:

"Section 2.03.   Repayment of Loan.   Borrower shall repay the unpaid principal amount plus interest on the Loan as follows:

(a)    Commencing August 1, 2001, and continuing monthly and regularly thereafter on the first (1st) day of each and every month thereafter for twenty-nine (29) months, interest only at the Initial Loan Interest Rate shall be due and payable; and

(b)    Commencing January 1, 2004, and continuing monthly and regularly thereafter on the first day of each and every month through and including December 1, 2004, principal and interest in an amount necessary to fully amortize a loan in the amount of $5,500,000.00 over a twenty-five (25) year period based on the Renewal Loan Interest Rate. The monthly payments shall be recalculated on each Interest Rate Adjustment Date based on (1) the Renewal Loan Interest Rate and (ii) the number of months remaining in the amortization period; provided that, on each anniversary date of the Loan, the number of months remaining in the amortization period shall be reset to 300 months; and

(c)    A final installment in the amount of all outstanding principal, plus accrued and unpaid interest shall be due and payable on January 1, 2005 (the "Maturity Date").

"Section 2.04.   Loan Interest Rate.   During the period commencing on the Closing Date and ending on the Maturity Date (the "Loan Period"), the then outstanding unpaid principal amount of Advances on the Loan shall bear interest prior to maturity as follows:

(a)    During the period commencing on the Closing Date and ending December 31, 2003, at a per annum rate equal to the lesser of (i) the Maximum Rate, or (ii) the sum of two hundred fifty (250) basis points (each basis point equaling one hundredth of one percent) in excess of the thirty (30) day LIBOR, as quoted in the Bloomberg, L.P., or such other reputable and nationally-recognized rate quoting service selected by Lender (the "LIBOR Rate"), in effect on each Interest Rate Adjustment Date (the "Initial Loan Interest Rate"); and

(b)    During the period commencing on January 1, 2004 and ending on the Maturity Date, at a per annum rate equal to the lesser of (i) the Maximum Rate, or (ii) the greater of (A) the LIBOR Rate or (B) four and one-half percent (4½%) (the "Renewal Loan Interest Rate").

- 3 -

"Loan Interest Rate" shall mean either the Initial Loan Interest Rate or the Renewal Loan Interest Rate, as applicable and in effect during the Loan Period as set out above in (a) and (b). All past due interest, or past due principal and interest, shall bear interest at the Default Rate."

2. Modification and Amendment to the Note.

A. Paragraphs (a) and (b) on the first page of the Note shall be deleted in their entity and replaced with the following:

"(a) Commencing August 1, 2001, and continuing monthly and regularly thereafter on the first (1st) day of each and every month thereafter for twenty-nine (29) months, interest only at the Initial Loan Interest Rate shall be due and payable; and

(b) Commencing January 1, 2004, and continuing monthly and regularly thereafter on the first day of each and every month through and including December 1, 2004, principal and interest in an amount necessary to fully amortize a loan in the amount of $5,500,000.00 over a twenty-five (25) year period based on the Renewal Loan Interest Rate. The monthly payments shall be recalculated on each Interest Rate Adjustment Date based on (i) the Renewal Loan Interest Rate and (ii) the number of months remaining in the amortization period; provided that, on each anniversary date of the Loan, the number of months remaining in the amortization period shall be reset to 300 months; and

(c) A final installment in the amount of all outstanding principal, plus accrued and unpaid interest shall be due and payable on the Maturity Date."

B. The defined terms "Loan Interest Rate" and "Maturity Date" as now stated in the Note shall be deleted and replaced with the following:

"Loan Interest Rate" shall have the same meaning as such term has in the Loan Agreement."

"Maturity Date" shall have the same meaning as such term has in the Loan Agreement."

3. Extension of Maturity. As stated above, the Maturity Date of the Note is hereby extended until January 1, 2005, when the unpaid principal balance of the Note, together with all accrued but unpaid interest thereon, shall be due and payable. Borrower hereby renews, but does not extinguish, the Note and the liens, security interests and assignments created and evidenced by the Deed of Trust and the other Loan Documents, and all of the Loan Documents are hereby renewed and modified by extending the Maturity Date thereof as set forth above.

4. Current Note Balance. As of the date hereof, the outstanding principal balance of the Note is Five Million Five Hundred Thousand Dollars ($5,500,000.00).

- 4 -

5.    Modification and Amendment to each Guaranty.  Effective as of the date hereof, Section 19 of each Guaranty is deleted in its entirety and replaced with the following:

"19.    Notwithstanding anything herein to the contrary, following such time, if ever, that (i) the Project (as defined in the Loan Agreement) achieves an average Debt Coverage Ratio (as defined in the Loan Agreement) of no less then 1.35 for the six (6) consecutive months immediately preceding the date on which Borrower advises Lender of such average Debt Coverage Ratio; (ii) rehabilitation of the Project is complete in accordance with the Budget (as defined in the Loan Agreement); (iii) there exists no Event of Default, and (iv) the Debt Coverage Ratio calculations have been reviewed by Lender and found to be satisfactory in its sole opinion, then Guarantor shall have no further liability with respect to the principal owning under the Note."

6.    Title Insurance.  Contemporaneously with the execution and delivery hereof, Borrower shall cause Title Company to issue with respect to the Policy and deliver to Lender the standard Texas Form T-38 Endorsement in accordance with Procedural Rule P-9b(3) and Rate Rule R-11(b) of the Basic Manual of Rules, Rates and Forms for the Writing of Title Insurance in the State of Texas ("Title Manual"), in form and content acceptable to Lender, confirming that the Policy is still in effect and unimpaired, notwithstanding the execution and delivery hereof and the terms and conditions contained herein.

7.    Acknowledgement by Borrower.  Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrower or any third party to Lender, as evidenced by the Loan Documents.  Borrower hereby acknowledges, agrees and represents that (a) Borrower is indebted to Lender pursuant to the terms of the Note, as modified hereby; (b) the liens, security interests and assignments created and evidenced by the Loan Documents are, respectively, valid and subsisting liens, security interests and assignments of the respective dignity and priority recited in the Loan Documents; (c) the lien of the Deed of Trust is hereby renewed and extended so as to secure the payment of the Note, as modified hereby; (d) there are no claims or offsets against, or defenses or counterclaims to, the terms or provisions of the Loan Documents and the obligations created or evidenced by the Loan Documents; (e) Borrower has no claims, offsets, defenses or counterclaims arising from any of Lender's or Trustee's acts or omissions with respect to the Property, the Loan Documents or Lender's or Trustee's performance under the Loan Documents or with respect to the Property; (f) the representations and warranties contained in the Loan Documents are true and correct representations and warranties of Borrower and third parties, as of the date hereof; and (g) Borrower is not in default and no event that occurred which, with the passage of time, giving of notice, or both, would constitute a default by Borrower of its obligations under the terms and provisions of the Loan Documents.  To the extent Borrower now has, or in the future possesses, any claims, offsets, defenses or counterclaims against Bank or Trustee or the repayment of all or a portion of the Loan, whether known or unknown, fixed or contingent, same are herby forever irrevocably waived and released in their entirety.  For purposes of this Paragraph, "Lender" and "Trustee" shall include the Lender's and Trustee's respective predecessors, successors, assigns, agents, present and former officers, directors, employees and representatives.

-5-

HOU:2252950.1

2004 064  11472

8. <u>No Waiver of Remedies</u>.  Except as may be expressly set forth herein, nothing contained in this Agreement shall prejudice, act as, or be deemed to be a waiver of any right or remedy available to Lender by reason of the occurrence or existence of any fact, circumstance or event constituting a default under the Note or the other Loan Documents.

9. <u>Consent of Guarantors</u>.  By execution below, each Guarantor (a) acknowledges and consents to the terms and provisions hereof, (b) ratifies, confirms and agrees that the Guaranty, as modified and amended herein, is and shall remain in full force and effect, (c) acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions of and the obligations created and evidenced by the Guaranty, (d) certifies that the representations and warranties contained in the Guaranty remain true and correct representations and warranties of Guarantor as of the date hereof, and (e) agrees to execute a new Guaranty Agreement in form satisfactory to Lender if so requested by Lender.

10. <u>Governing Law</u>.  THE TERMS AND CONDITIONS HEREOF SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE FEDERAL LAW.

11. <u>Costs and Expenses</u>.  Contemporaneously with the execution and delivery hereof, Borrower shall pay, or cause to be paid:

(a)    A renewal and extension fee to be paid to Lender in the amount of $13,750.00, which amount is 0.25% of the current outstanding principal balance of the Loan; and

(b)    Attorney's fees and all expenses incurred by Lender in connection with the preparation of this Agreement including all costs associated with obtaining the Endorsement from the Title Company.

12. <u>Effectiveness of the Loan Documents</u>.  Except as expressly modified by the terms and provisions hereof or provided herein to the contrary, each and every term and provision of the Loan Documents are hereby ratified and shall remain in full force and effect and Borrower covenants to observe, comply with and perform each of the terms and provisions of the Loan Documents, as modified hereby; provided, however, that any reference in any of the Loan Documents to the Loan, the amount constituting the Loan, any defined terms, or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan, the amount constituting the Loan, the defined terms and to such other Loan Documents, as modified hereby.  The parties hereto agree that the modification as provided herein shall in no manner vitiate, impair or affect the liens and security interests created and evidenced by the Deed of Trust and the other Loan Documents (except as expressly modified, amended, renewed and extended herein) and that such liens and security interests shall not be and are not in any manner released or waived; the purpose of this instrument being simply to modify the indebtedness evidenced by the Note and to modify the Deed of Trust and the other Loan Documents as expressly set forth herein and to carry forward the liens and security interests securing the same.

- 6 -

13.   Binding Agreement.  This Agreement shall be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto; provided, however, the foregoing shall not be deemed or construed to (a) permit, sanction, authorize or condone the assignment of all or any part of the Property or any of Borrower's rights, titles or interests in and to the Property or any rights, titles or interests in and to Borrower, except as expressly authorized in the Loan Documents, or (b) confer any right, title, benefit, cause of action or remedy upon any Person or entity not a party hereto, which such party would not or did not otherwise possess.

14.   Additional Documentation.  From time to time, Borrower shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender and to take and cause to be taken, all such actions, as the Lender shall deem necessary or appropriate in connection with, or related to, this Agreement and the transactions contemplated hereby, including, but not limited to, such actions as shall be necessary (a) to record this Agreement and any related instrument, document or agreement, (b) to cause Title Company or an insurer satisfactory to Lender, as the case may be, to issue a mortgagee policy of title insurance with respect to the lien of the Deed of Trust, or, at Lender's sole option, an endorsement to any existing mortgagee policy of title insurance, such policy or endorsement to be in form and substance to Lender, and (c) to satisfy appraisal and other legal requirements under applicable law and/or in accordance with Lender's policies and procedures.  Upon Lender's request, Borrower shall cause to be delivered to Lender an opinion of counsel, satisfactory to Lender as to form, substance and rendering attorney, opining to (x) the validity and enforceability of this Agreement and the terms and provisions hereof, and any other agreement executed in connection with the transaction contemplated hereby, (y) the authority of Borrower, and any constituents of Borrower, to execute, deliver and perform its or their respective obligations under the Loan Documents, as hereby modified, and (z) such other matters as reasonably requested by Lender.

15.   Headings.  The section headings hereof are inserted for convenience of reference only and shall in no way alter, amend, define or be used in the construction or interpretation of the text of such section.

16.   Construction.  Whenever the context hereof so requires, reference to the singular shall include the plural and likewise, the plural shall include the singular; words denoting gender shall be construed to mean the masculine, feminine or neuter, as appropriate; and specific enumeration shall not exclude the general, but shall be construed as cumulative of the general recitation.

17.   Severability.  If any clause or provision of this Agreement is or should ever be held to be illegal, invalid or unenforceable under any present or future law applicable to the terms hereof, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and that in lieu of each such clause or provision of this Agreement that is illegal, invalid or unenforceable, such clause or provision shall be judicially construed and interpreted to be as a similar in substance and content to such illegal, invalid or unenforceable clause or provision, as the context thereof would reasonably suggest, so as to thereafter be legal, valid and enforceable.

- 7 -

18.    Counterparts.  To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature and acknowledgement of, or on behalf of, each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of , each of the parties hereto.  Any signature and acknowledgement page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures and acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature and acknowledgment pages.

19.    Time.  Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

20.    Requirement for Renewal of the Loan.  Notwithstanding anything to the contrary contained herein, it shall be a requirement to the renewal of the Loan that, either prior to or simultaneously with the closing of the renewal, Borrower furnish Lender with the following:

(a)    Copies of the 2002 personal income tax returns, as filed with the Internal Revenue Service, of Guarantors James S. Goody, Brian H. Printz and Jonathan J. Goody; and

(b)    Current operating statements and rent rolls for each of the following related projects, commonly known as Oklahoma Bay Landing, Texas Bay Summit Hills, Texas Bay Plantation House and Oklahoma Bay Homestead Park.

**[Signature Pages Follow]**

- 8 -

HOU:2252950.1

2004064 11475

EXECUTED AS OF THE DATE FIRST ABOVE WRITTEN.

**BORROWER:**

**Texas Bay Brookwood Limited Partnership,**
**a Texas limited partnership**

By:   Texas Bay Brookwood General Partner, L.L.C.,
      a Texas limited liability company, its general partner

      By: _____
             James S. Goody, Managing Member


THE STATE OF CALIFORNIA    §

COUNTY OF SAN FRANCISCO    §

     This instrument was acknowledged before me on the 13th day of January, 2004, by James S. Goody, the Managing Member of Texas Bay Brookwood General Partner, L.L.C., a Texas limited liability company, the general partner of Texas Bay Brookwood Limited Partnership, a Texas limited partnership, as the act and deed of said limited liability company and limited partnership.

PAUL NORMAN
Commission # 1433153
Notary Public - California
San Francisco County
My Comm. Expires Aug 1, 2007

_____
NOTARY PUBLIC, STATE OF CALIFORNIA

- 9 -

**GUARANTOR:**

_____

JAMES S. GOODY

THE STATE OF CALIFORNIA          §

COUNTY OF SAN FRANCISCO          §

    This instrument was acknowledged before me on the 13th day of January, 2004, by James S. Goody, an individual.



PAUL NORMAN
Commission # 1433153
Notary Public - California
San Francisco County
My Comm. Expires Aug 1, 2007

NOTARY PUBLIC, STATE OF CALIFORNIA

- 10 -

**GUARANTOR:**

BRIAN H. PRINTZ


THE STATE OF CALIFORNIA          §

COUNTY OF SAN FRANCISCO          §

    This instrument was acknowledged before me on the _13th_ day of January, 2004, by Brian H. Printz, an individual.

PAUL NORMAN
Commission # 1433153
Notary Public - California
San Francisco County
My Comm. Expires Aug 1, 2007

NOTARY PUBLIC, STATE OF CALIFORNIA

- 11 -

**GUARANTOR:**

JONATHAN J. GOODY

THE STATE OF CALIFORNIA     §

COUNTY OF SAN FRANCISCO     §

This instrument was acknowledged before me on the 13t day of January, 2004, by Jonathan J. Goody, an individual.

PAUL NORMAN
Commission # 1433153
Notary Public - California
San Francisco County
My Comm. Expires Aug 1, 2007

NOTARY PUBLIC, STATE OF CALIFORNIA

- 12 -

**LENDER:**

COASTAL BANC ssb,
a Texas chartered banking association

By: 
      Lewis A. Kaufman, Senior Vice President


THE STATE OF TEXAS     §

COUNTY OF HARRIS     §

    This instrument was acknowledged before me on the *16th* day of January, 2004, by Lewis A. Kaufman, Senior Vice President of COASTAL BANC ssb, a Texas chartered banking association, on behalf of said banking association.

C. ALMAGRO
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires
JUNE 7, 2007

NOTARY PUBLIC, STATE OF TEXAS

- 13 -

HOU:2252950.1

2004064 11480

## EXHIBIT "A"

Situated in Dallas County, Texas, and being a 9.697 acre tract of land out of City of Dallas Block No. 5929; said tract being more particularly described as follows:

BEGINNING at the intersection of East line of Plymouth Road and the South line of the Dallas Fort Worth Turnpike;

Thence South 71 degrees 27 minutes 05 seconds East, with said Turnpike line, 168.83 feet to an angle point;

Said point being the beginning of a curve to the left whose center bears North 18 degrees 27 minutes 41 seconds East, a distance of 3019.79 feet;

Thence with said curve to the left and continuing with said turnpike line, through a central angle of 08 degrees 50 minutes 48 seconds, an arc distance of 466.27 feet to the end of said curve and an angle point;

Thence North 89 degrees 23 minutes 00 seconds East, continuing with said Turnpike line, 137.89 feet to a point for corner; said point being the Northwest corner of The Crockett Company 11.718 acre tract;

Thence South 00 degrees 14 minutes 46 seconds East, with the West line of said Crockett tract, 473.20 feet to a point for corner in the centerline of Coombs Creek; said point also being in the North line of Stevens Memorial Park of the City of Dallas;

Thence South 89 degrees 05 minutes 49 seconds West, with the said North line of Stevens Park, at 706.3 feet, more or less, pass the Northeast Corner of the Irwin Middlebrook tract, in all, 872.47 feet to a point for corner in the said East line of Plymouth Road;

Thence North 19 degrees 55 minutes 36 seconds East, with the said East line of Plymouth Road, 289.56 feet to the beginning of a curve to the left whose radius is 480.00 feet;

Thence with said curve to the left, through a central angle of 17 degrees 51 minutes 19 seconds, an arc distance of 149.58 feet to the end of said curve;

Thence North 02 degrees 04 minutes 17 seconds East, 61.16 feet to an angle point in said East line of Plymouth Road;

Thence North 02 degrees 55 minutes 43 seconds West, 172.79 feet to the place of beginning; containing 422,413.84 square feet, or 9.697 acres of land.

HOU:671700.1

2004064 11482

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

04 APR -2 PM 3: 08

COUNTY CLERK
DALLAS CO., TEXAS

Exhibit C

$35.00  CTIC GF# 2101-00348-
(549021)

3232122

5061129      $35.00  Deed
02/04/05

(Hibernia Loan #8991235-0001)

## SECOND EXTENSION AND MODIFICATION AGREEMENT

THE STATE OF TEXAS    §

COUNTY OF DALLAS    §

KNOW ALL MEN BY THESE PRESENTS:

THIS SECOND EXTENSION AND MODIFICATION AGREEMENT (this "Agreement") is made as of the 1st day of January, 2005, by and between TEXAS BAY BROOKWOOD LIMITED PARTNERSHIP, a Texas limited partnership ("Borrower") and HIBERNIA NATIONAL BANK, successor by merger to Coastal Banc ssb ("Lender").

## WITNESSETH:

WHEREAS, Lender made a loan ("Loan") to Borrower on July 11, 2001, in the principal amount of Five Million Five Hundred Thousand Dollars ($5,500,000.00), and

WHEREAS, Lender and Borrower executed that certain Rehabilitation Loan Agreement (together with the First Extension defined below and this Agreement, the "Loan Agreement"), of even date therewith, pertaining to the Loan, and

WHEREAS, Borrower executed and delivered to Lender that certain Promissory Note (as renewed, extended or modified, without limitation, any renewal, extension or modification hereinafter referenced, the "Note"), of even date therewith, payable to the order of Lender in the amount of and evidencing the Loan; and

WHEREAS, Borrower executed and delivered that certain Deed of Trust, Mortgage, Security Agreement and Financing Statement (as renewed, extended or modified, including, without limitation, any renewal, extension or modification hereinafter referenced, the "Deed of Trust"), of even date with the Note, to Linda B. Frazier, as trustee (together with any successor or substitute thereof, the "Trustee"), for the benefit of Lender, recorded in the Deed of Trust Records of Dallas County, Texas in Volume 2001134, Page 1304, covering the real property described in Exhibit "A" attached hereto and incorporated herein for all purposes, together with all improvements, appurtenances, other properties (whether real or personal), rights and interests described in and encumbered by the Deed of Trust (collectively, the "Property"), to secure the payment of the Note and performance by Borrower of the other obligations set forth in the Loan Documents (as hereinafter defined); and

WHEREAS, Borrower executed and delivered to Lender that certain Absolute Assignment of Rents and Income (With License Back) (as amended, including, without limitation, any amendments hereinafter referenced, the "Absolute Assignment"), of even date with the Note, recorded in the Deed Records of Dallas County, Texas in Volume 2001134, Page 1339, assigning to Lender all rents, lease, income, revenues, issues and profits which may arise

- 1 -

HOU 2395290 2

2005 024 10537

from the operation or ownership of the Property, to secure the payment of the Note and performance by Borrower of the other obligations set forth in the Loan Documents; and

WHEREAS, Borrower executed and delivered to Lender that certain Collateral Assignment of Leases, Deposits and Agreements (as amended, including, without limitation, any amendments hereinafter referenced, the "Collateral Assignment"), of even date with the Note, recorded in the Deed Records of Dallas County, Texas in Volume 2001134, Page 1351, assigning to Lender all of Borrower's right, title and interest to all leases, agreements, security deposits, monetary deposits, and other documents and agreements as more fully set out in the Collateral Assignment, which may arise from the operation or ownership of the Property, to secure the payment of the Note and performance by Borrower of the other obligations set forth in the Loan Documents; and

WHEREAS, Borrower caused to be issued by Chicago Title Insurance Company ("Title Company") that certain Mortgagee Policy of Title Insurance No 044-903-101-549021 ("Policy") in the amount of the Note, insuring the dignity and priority of the liens created and evidenced by the Deed of Trust, and

WHEREAS, Borrower caused each of James S. Goody, Brian H Printz and Jonathan J. Goody (jointly and severally, the "Guarantor") to execute and deliver to Lender their individual Guaranty Agreement (the three (3) Guaranty Agreements jointly and severally, the "Guaranty"), all of even date with the Note, guaranteeing payment and performance of all of the obligations contained in the Loan Documents, including, without limitation, the Note; and

WHEREAS, Lender and Borrower entered into that certain Extension and Modification Agreement dated as of January 1, 2004, recorded in the Deed Records of the Office of the County Clerk of Dallas, County, Texas in Volume 2004064, Page 11468 (the "First Extension"), and

WHEREAS, Lender and Borrower now propose to again modify certain of the terms and provisions of the Note, the Deed of Trust, the Loan Agreement, the Guaranty and the other related documents pertaining to, evidencing, governing or securing the Loan (collectively, the "Loan Documents").

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender hereby agree, notwithstanding anything to the contrary contained in any of the Loan Documents, as follows:

1.    <u>Modification and Amendment to the Loan Agreement.</u>

A.    <u>Section 1 01. Definitions</u> shall be modified and amended by the deletion of the following defined terms, with the following replacements:

"Debt Service" for any particular period means the hypothetical monthly principal and interest payments during the period based on a loan in the amount of $5,379,563.66

- 2 -

HOU 2395290.2

2005 024 10538

requiring equal monthly payments of principal and interest based on a twenty-four (24) year amortization, at the greater of (A) the Renewal Loan Interest Rate or (B) seven and one-half percent (7½%) per annum."

"Trustee" means Fay Paysse, whose address for notice purposes is Hibernia National Bank, 313 Carondelet Street, New Orleans, Louisiana 70130, in replacement and substitution of Linda B. Frazier, previously appointment as Trustee for the Lender.

B.     Sections 2.03 and 2.04 of the Loan Agreement shall be deleted in its entirety and replaced with the following:

"Section 2.03   Repayment of Loan.   Borrower shall repay the unpaid principal amount plus interest on the Loan as follows

(a)     Commencing August 1, 2001, and continuing monthly and regularly thereafter on the first (1st) day of each and every month thereafter for twenty-nine (29) months, interest only at the Initial Loan Interest Rate shall be due and payable; and

(b)     Commencing January 1, 2004, and continuing monthly and regularly thereafter on the first day of each and every month through and including December 1, 2004, principal and interest in an amount necessary to fully amortize a loan in the amount of $5,500,000.00 over a twenty-five (25) year period based on the Renewal Loan Interest Rate. The monthly payments shall be recalculated on each Interest Rate Adjustment Date based on (i) the Renewal Loan Interest Rate and (ii) the number of months remaining in the amortization period; provided that, on each anniversary date of the Loan, the number of months remaining in the amortization period shall be reset to 300 months; and

(c)     Commencing January 5, 2005, and continuing monthly and regularly thereafter on the 5th day of each and every month through and including December 5, 2007, Borrower shall pay (i) all accrued interest plus (ii) principal in an amount equal to the principal portion of the monthly payments that would be due to fully amortize the principal amount of $5,379,463.66 over a twenty-four (24) year period based on an interest rate of seven and one-half percent (7 ½%) per annum; and

(d)     A final installment in the amount of all outstanding principal, plus accrued and unpaid interest shall be due and payable on January 1, 2008 (the "Maturity Date").

"Section 2.04.   Loan Interest Rate.   During the period commencing on the Closing Date and ending on the Maturity Date (the "Loan Period"), the then outstanding unpaid principal amount of Advances on the Loan shall bear interest prior to maturity as follows

- 3 -

(a)     During the period commencing on the Closing Date and ending December 31, 2003, at a per annum rate equal to the lesser of (i) the Maximum Rate, or (ii) the sum of two hundred fifty (250) basis points (each basis point equaling one hundredth of one percent) in excess of the thirty (30) day LIBOR, as quoted in the Bloomberg, L.P., or such other reputable and nationally-recognized rate quoting service selected by Lender (the "LIBOR Rate"), in effect on each Interest Rate Adjustment Date (the "Initial Loan Interest Rate"); and

(b)     During the period commencing on January 1, 2004 and ending on the Maturity Date, at a per annum rate equal to the lesser of (i) the Maximum Rate, or (ii) the greater of (A) the LIBOR Rate or (B) four and one-half percent (4½%) (the "Renewal Loan Interest Rate").

"Loan Interest Rate" shall mean either the Initial Loan Interest Rate or the Renewal Loan Interest Rate, as applicable and in effect during the Loan Period as set out above in (a) and (b). All past due interest, or past due principal and interest, shall bear interest at the Default Rate."

C.     Section 7.07 of the Loan Agreement shall be amended by the addition of the following to the end of the current Section 7 07: "Notwithstanding the foregoing, should Lender chose to use a third-party inspection firm, Borrower will be required to pay one inspection fee per year, if requested by Lender"

D.     Article VII shall be further amended by the addition of a new Section 7 16, to read as follows:

"Section 7 16  Debt Service Coverage   Borrower will maintain a minimum Debt Service Coverage of 1.35 to 1 0, which will be tested monthly by Lender."

E.     Article X, Miscellaneous is hereby amended by the addition of a new Section 10.20, to read as follows·

"Section 10.20  Appraisals.  A maximum 80% LTV of the Property is required at all times during the term of the Loan  If, in Lender's sole judgment, there is a concern about the value of the Property, Lender may require that a new appraisal be conducted which will be at the expense of Borrower. If Lender requires, an additional re-appraisal may be requested and conducted on behalf of Lender, at Lender's expense."

2.     Modification and Amendment to the Note. Paragraphs (a), (b) and (c) on the first page of the Note shall be deleted in their entity and replaced with the following paragraphs (a) through (d):

"(a)     Commencing August 1, 2001, and continuing monthly and regularly thereafter on the first (1st) day of each and every month thereafter for

- 4 -

2005 024  10540

twenty-nine (29) months, interest only at the Initial Loan Interest Rate shall be due and payable, and

(b) Commencing January 1, 2004, and continuing monthly and regularly thereafter on the first day of each and every month through and including December 1, 2004, principal and interest in an amount necessary to fully amortize a loan in the amount of $5,500,000.00 over a twenty-five (25) year period based on the Renewal Loan Interest Rate. The monthly payments shall be recalculated on each Interest Rate Adjustment Date based on (i) the Renewal Loan Interest Rate and (ii) the number of months remaining in the amortization period, provided that, on each anniversary date of the Loan, the number of months remaining in the amortization period shall be reset to 300 months; and

(c) Commencing January 5, 2005, and continuing monthly and regularly thereafter on the 5th day of each and every month through and including December 5, 2007, payments of principal plus interest as set forth in Section 2 03(c) of the Loan Agreement; and

(d) A final installment in the amount of all outstanding principal, plus accrued and unpaid interest shall be due and payable on the Maturity Date "

3    Extension of Maturity.  As stated above, the Maturity Date of the Note is hereby extended until January 1, 2008, when the unpaid principal balance of the Note, together with all accrued but unpaid interest thereon, shall be due and payable. Borrower hereby renews, but does not extinguish, the Note and the liens, security interests and assignments created and evidenced by the Deed of Trust and the other Loan Documents, and all of the Loan Documents are hereby renewed and modified by extending the Maturity Date thereof as set forth above.

4.    Current Note Balance.  As of the date hereof, the outstanding principal balance of the Note is Five Million Three Hundred Seventy-nine Thousand Four Hundred Sixty-three and 66/100 Dollars ($5,379,463.66).

5.    Title Insurance.  Contemporaneously with the execution and delivery hereof, Borrower shall cause Title Company to issue with respect to the Policy and deliver to Lender the standard Texas Form T-38 Endorsement in accordance with Procedural Rule P-9b(3) and Rate Rule R-11(b) of the Basic Manual of Rules, Rates and Forms for the Writing of Title Insurance in the State of Texas ("Title Manual"), in form and content acceptable to Lender, confirming that the Policy is still in effect and unimpaired, notwithstanding the execution and delivery hereof and the terms and conditions contained herein.

6    Acknowledgement by Borrower.  Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrower or any third party to Lender, as evidenced by the Loan Documents. Borrower hereby acknowledges, agrees and represents that (a) Borrower is indebted to Lender pursuant to the terms of the Note, as modified hereby; (b) the liens, security interests and assignments created and evidenced by the Loan Documents are, respectively, valid and subsisting liens,

- 5 -

HOU 23952902

2005 024  I 0541

security interests and assignments of the respective dignity and priority recited in the Loan Documents; (c) the lien of the Deed of Trust is hereby renewed and extended so as to secure the payment of the Note, as modified hereby; (d) there are no claims or offsets against, or defenses or counterclaims to, the terms or provisions of the Loan Documents and the obligations created or evidenced by the Loan Documents; (e) Borrower has no claims, offsets, defenses or counterclaims arising from any of Lender's or Trustee's acts or omissions with respect to the Property, the Loan Documents or Lender's or Trustee's performance under the Loan Documents or with respect to the Property; (f) the representations and warranties contained in the Loan Documents are true and correct representations and warranties of Borrower and third parties, as of the date hereof; and (g) Borrower is not in default and no event that occurred which, with the passage of time, giving of notice, or both, would constitute a default by Borrower of its obligations under the terms and provisions of the Loan Documents. To the extent Borrower now has, or in the future possesses, any claims, offsets, defenses or counterclaims against Bank or Trustee or the repayment of all or a portion of the Loan, whether known or unknown, fixed or contingent, same are herby forever irrevocably waived and released in their entirety. For purposes of this Paragraph, "Lender" and "Trustee" shall include the Lender's and Trustee's respective predecessors, successors, assigns, agents, present and former officers, directors, employees and representatives.

7.    No Waiver of Remedies.  Except as may be expressly set forth herein, nothing contained in this Agreement shall prejudice, act as, or be deemed to be a waiver of any right or remedy available to Lender by reason of the occurrence or existence of any fact, circumstance or event constituting a default under the Note or the other Loan Documents.

8.    Consent of Guarantors  By execution below, each Guarantor (a) acknowledges and consents to the terms and provisions hereof, (b) ratifies, confirms and agrees that the Guaranty, as modified and amended herein, is and shall remain in full force and effect, (c) acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions of and the obligations created and evidenced by the Guaranty, (d) certifies that the representations and warranties contained in the Guaranty remain true and correct representations and warranties of Guarantor as of the date hereof, and (e) agrees to execute a new Guaranty Agreement in form satisfactory to Lender if so requested by Lender.

9.    Governing Law.  THE TERMS AND CONDITIONS HEREOF SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE FEDERAL LAW

10.    Costs and Expenses  Contemporaneously with the execution and delivery hereof, Borrower shall pay, or cause to be paid:

.  (a)    A renewal and extension fee to be paid to Lender in the amount of $13,500.00, which amount is 0 25% of the current outstanding principal balance of the Loan, and

- 6 -

HOU.2395290 2

2005 024 10542

Page #6

(b)   Attorney's fees and all expenses incurred by Lender in connection with the preparation of this Agreement including all costs associated with obtaining the Endorsement from the Title Company

11.   <u>Effectiveness of the Loan Documents</u>.  Except as expressly modified by the terms and provisions hereof or provided herein to the contrary, each and every term and provision of the Loan Documents are hereby ratified and shall remain in full force and effect and Borrower covenants to observe, comply with and perform each of the terms and provisions of the Loan Documents, as modified hereby; provided, however, that any reference in any of the Loan Documents to the Loan, the amount constituting the Loan, any defined terms, or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan, the amount constituting the Loan, the defined terms and to such other Loan Documents, as modified hereby.  The parties hereto agree that the modification as provided herein shall in no manner vitiate, impair or affect the liens and security interests created and evidenced by the Deed of Trust and the other Loan Documents (except as expressly modified, amended, renewed and extended herein) and that such liens and security interests shall not be and are not in any manner released or waived; the purpose of this instrument being simply to modify the indebtedness evidenced by the Note and to modify the Deed of Trust and the other Loan Documents as expressly set forth herein and to carry forward the liens and security interests securing the same

12.   <u>Binding Agreement</u>.  This Agreement shall be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto; provided, however, the foregoing shall not be deemed or construed to (a) permit, sanction, authorize or condone the assignment of all or any part of the Property or any of Borrower's rights, titles or interests in and to the Property or any rights, titles or interests in and to Borrower, except as expressly authorized in the Loan Documents, or (b) confer any right, title, benefit, cause of action or remedy upon any Person or entity not a party hereto, which such party would not or did not otherwise possess.

13.   <u>Additional Documentation</u>.  From time to time, Borrower shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender and to take and cause to be taken, all such actions, as the Lender shall deem necessary or appropriate in connection with, or related to, this Agreement and the transactions contemplated hereby, including, but not limited to, such actions as shall be necessary (a) to record this Agreement and any related instrument, document or agreement, (b) to cause Title Company or an insurer satisfactory to Lender, as the case may be, to issue a mortgagee policy of title insurance with respect to the lien of the Deed of Trust, or, at Lender's sole option, an endorsement to any existing mortgagee policy of title insurance, such policy or endorsement to be in form and substance to Lender, and (c) to satisfy appraisal and other legal requirements under applicable law and/or in accordance with Lender's policies and procedures.  Upon Lender's request, Borrower shall cause to be delivered to Lender an opinion of counsel, satisfactory to Lender as to form, substance and rendering attorney, opining to (x) the validity and enforceability of this Agreement and the terms and provisions hereof, and any other agreement executed in connection with the transaction contemplated hereby, (y) the authority of Borrower, and any constituents of

- 7 -

HOU 2395290.2

2005024 10543

Borrower, to execute, deliver and perform its or their respective obligations under the Loan Documents, as hereby modified, and (z) such other matters as reasonably requested by Lender.

14. <u>Headings</u>. The section headings hereof are inserted for convenience of reference only and shall in no way alter, amend, define or be used in the construction or interpretation of the text of such section.

15. <u>Construction</u>. Whenever the context hereof so requires, reference to the singular shall include the plural and likewise, the plural shall include the singular; words denoting gender shall be construed to mean the masculine, feminine or neuter, as appropriate, and specific enumeration shall not exclude the general, but shall be construed as cumulative of the general recitation.

16. <u>Severability</u> If any clause or provision of this Agreement is or should ever be held to be illegal, invalid or unenforceable under any present or future law applicable to the terms hereof, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and that in lieu of each such clause or provision of this Agreement that is illegal, invalid or unenforceable, such clause or provision shall be judicially construed and interpreted to be as a similar in substance and content to such illegal, invalid or unenforceable clause or provision, as the context thereof would reasonably suggest, so as to thereafter be legal, valid and enforceable.

17. <u>Counterparts</u>. To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required It shall not be necessary that the signature and acknowledgement of, or on behalf of, each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of , each of the parties hereto. Any signature and acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures and acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature and acknowledgment pages.

18. <u>Time</u> Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

19. <u>Requirement for Renewal of the Loan</u>. Notwithstanding anything to the contrary contained herein, it shall be a requirement to the renewal of the Loan that the appraisal being conducted simultaneously with the closing of the renewal be, in all respects, satisfactory to Lender

[Signature Pages Follow]

- 8 -

HOU.2395790.2

2005 024 10544

EXECUTED TO BE EFFECTIVE AS OF THE DATE FIRST ABOVE WRITTEN

**BORROWER:**

**Texas Bay Brookwood Limited Partnership,
a Texas limited partnership**

By:    Texas Bay Brookwood General Partner, L.L.C.,
      a Texas limited liability company, its general partner



By _____
          James S. Goody, Managing Member



JANELLE CORRIE HIRSCH
Commission # 1493499
Notary Public - California
San Francisco County
My Comm. Expires Jun 1, 2008

THE STATE OF CALIFORNIA    §

COUNTY OF SAN FRANCISCO    §

This instrument was acknowledged before me on the *31* day of January, 2005, by James S. Goody, the Managing Member of Texas Bay Brookwood General Partner, L.L.C., a Texas limited liability company, the general partner of Texas Bay Brookwood Limited Partnership, a Texas limited partnership, as the act and deed of said limited liability company and limited partnership.

_____
    NOTARY PUBLIC, STATE OF CALIFORNIA

- 9 -

2005 024 10545

**GUARANTOR:**

JAMES S. GOODY

THE STATE OF CALIFORNIA       §

COUNTY OF SAN FRANCISCO    §

This instrument was acknowledged before me on the _3/_ day of January, 2005, by James S. Goody, an individual.

NOTARY PUBLIC, STATE OF CALIFORNIA

– 10 –

HOU 2395290.2

2005 024 10546

Page #10

**GUARANTOR:**

BRIAN H. PRINTZ

THE STATE OF CALIFORNIA     §

COUNTY OF SAN FRANCISCO     §

This instrument was acknowledged before me on the _3/_ day of January, 2005, by Brian H. Printz, an individual.

NOTARY PUBLIC, STATE OF CALIFORNIA

- 11 -

HOU:2395290 2

2005 024 10547

**GUARANTOR:**

JONATHAN J. GOODY

THE STATE OF CALIFORNIA        §

COUNTY OF SAN FRANCISCO        §

This instrument was acknowledged before me on the _31_ day of January, 2005, by Jonathan J. Goody, an individual.

NOTARY PUBLIC, STATE OF CALIFORNIA

– 12 –

HOU 2395290.2

2005 024 10548

**LENDER:**

HIBERNIA NATIONAL BANK

By 

Lewis A. Kaufman, Senior Vice President


THE STATE OF TEXAS      §

COUNTY OF HARRIS      §

    This instrument was acknowledged before me on the 24 th day of January, 2005, by Lewis A. Kaufman, Senior Vice President of HIBERNIA NATIONAL BANK, on behalf of said national bank

C. ALMAGRO
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires
JUNE 7, 2007

NOTARY PUBLIC, STATE OF TEXAS


- 13 -

HOU 2395290.2

2005024 10549

## EXHIBIT "A"

Situated in Dallas County, Texas, and being a 9 697 acre tract of land out of City of Dallas Block No 5929; said tract being more particularly described as follows:

BEGINNING at the intersection of East line of Plymouth Road and the South line of the Dallas Fort Worth Turnpike;

Thence South 71 degrees 27 minutes 05 seconds East, with said Turnpike line, 168.83 feet to an angle point;

Said point being the beginning of a curve to the left whose center bears North 18 degrees 27 minutes 41 seconds East, a distance of 3019.79 feet;

Thence with said curve to the left and continuing with said turnpike line, through a central angle of 08 degrees 50 minutes 48 seconds, an arc distance of 466.27 feet to the end of said curve and an angle point;

Thence North 89 degrees 23 minutes 00 seconds East, continuing with said Turnpike line, 137.89 feet to a point for corner; said point being the Northwest corner of The Crockett Company 11.718 acre tract;

Thence South 00 degrees 14 minutes 46 seconds East, with the West line of said Crockett tract, 473 20 feet to a point for corner in the centerline of Coombs Creek; said point also being in the North line of Stevens Memorial Park of the City of Dallas,

Thence South 89 degrees 05 minutes 49 seconds West, with the said North line of Stevens Park, at 706.3 feet, more or less, pass the Northeast Corner of the Irwin Middlebrook tract, in all, 872.47 feet to a point for corner in the said East line of Plymouth Road;

Thence North 19 degrees 55 minutes 36 seconds East, with the said East line of Plymouth Road. 289.56 feet to the beginning of a curve to the left whose radius is 480.00 feet;

Thence with said curve to the left, through a central angle of 17 degrees 51 minutes 19 seconds, an arc distance of 149.58 feet to the end of said curve;

Thence North 02 degrees 04 minutes 17 seconds East, 61.16 feet to an angle point in said East line of Plymouth Road;

Thence North 02 degrees 55 minutes 43 seconds West, 172 79 feet to the place of beginning, containing 422,413.84 square feet, or 9.697 acres of land.

Return to: Donna Orina
Chicago Title Insurance Company
Southwest Region Commercial Center
2001 Bryan Street, Suite 1700
Dallas, Texas 75201      214-303-5300

2005024 10550

2005024 10551

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

05 FEB -4 PM 2: 59

COUNTY CLERK
DALLAS CO., TEXAS

# Exhibit D



**COPY**

January 25, 2008

Texas Bay Brookwood LP
ATTN  Bay Equity RE Acquisitions
2030 Union Street Suite 300
San Francisco, CA  94123

      Re   8991235-0001, Promissory Note dated July 11, 2001 in the original amount of
$5,500,000 00

Dear Sir/Madam

      This will confirm that we have extended the maturity date on your promissory note dated
July 11, 2001, so that all amounts owed under the note are due and owing on February 15, 2008
You must continue to make monthly payments of all accrued interest and monthly payments of
principal in the amount of $7,578 98, with all payments due on the 5th day of each month during the
extended term  All other terms and conditions of your promissory note and related documents
remain unchanged

      If you have any questions, please contact Chris O'Brien at 713-435-5443

                Sincerely,

                Robin J Thompson
                Documentation Specialist II

# Exhibit E



**Capital**One®

March 21, 2008

Texas Bay Brookwood LP
ATTN  Bay Equity RE Acquisitions
2030 Union Street Suite 300
San Francisco, CA  94123

> Re   8991235-0001, Promissory Note dated July 11, 2001 in the original amount of $5,500,000 00

Dear Sir/Madam

    This will confirm that we have extended the maturity date on your promissory note dated July 11, 2001, so that all amounts owed under the note are due and owing on May 5, 2008   You must continue to make monthly payments of principal plus interest according to the alternate repay schedule with all payments due on the 5th day of each month during the extended term  All other terms and conditions of your promissory note and related documents remain unchanged

    If you have any questions, please contact Chris O'Brien at 713-435-5443

    Sincerely,

    Robin J Thompson
    Documentation Specialist II